v. The United States of America, pardon me, not to exceed 15 minutes per side, Mr. Strines, for the defendant's appellate. Good morning, Your Honor. Good morning. Peter Strines, the Nashville Bar, here on behalf of defendant appellant Adrian Patterson, and I would like to reserve three minutes for rebuttal. That's fine, and you may proceed. Thank you. Your Honors, what played out in the U.S. District Court in Nashville on February the 23rd, 2012, which was the second day of jury deliberations after a two-week trial, was not the old Henry Fonda movie, Twelve Angry Men. It was, in fact, two angry women and one ambiguous man with an agenda who succeeded in ousting a deliberating juror, a female African-American named Ivy LeClaire, from the panel who was an obvious holdout and was the lone holdout for acquittal for no- Is that in the record? It's not- You can say that, but, I mean, aren't you limited to the record when you appeal before us? I mean, should you be saying things that aren't exactly in the record? I think when you read these cases, Your Honor, cases like Brown- You're talking about what's in the record. I mean, you say she was an obvious holdout, but is there anything in the record that says that? Well, there's nothing in the record that says that, but I think all of the- You should be limiting your presentation to what's in the record. Yes, but my point is that when you read the cases like Brown and the other ones, I think those panels have said that you really have to infer what's going on because you don't have any explicit statements from the jurors, and that was the point that I was making. If you have a chance to take a look at the deliberation timeline that occurred in this case, I believe it compels a conclusion that Ms. LeClaire was the lone holdout in the face of a hostile pro-conviction majority. The deliberation timeline, February 22, 2012, which was the first afternoon of deliberations. After deliberating three hours, a message was sent to Senior Judge Nixon that read, Judge Nixon, we cannot reach a unanimous decision on either defendant. Judge Nixon gave them sort of an extemporaneous modified Allen charge and released them for the day. On the next morning, February 23, 2012, the jurors began deliberations at 9 a.m. Within an hour of their deliberations, they had a note. They had another message that I know the court is familiar with, and if I can just paraphrase it, the note said, one of the jurors, and this was written by the foreperson of the jury, one of the jurors overheard a fellow juror that we later learned was Ivy LeClaire commenting on having prior information about drug dealing that she did not reveal during jury selection. I feel, so the foreperson is saying, I feel that this prior information could perhaps be influencing her ability to reach a fair decision, which I think, based on all the facts and circumstances in my mind, compelled the conclusion that the fair decision would have been to convict and should have been made known during the selection process. Thus, can we consider removing this juror and using one of the alternates? What is, in your view, the standard that is before this court in terms of the removal of LeClaire? Is it whether Judge Nixon abused his discretion in removing her? I think the standard is a juror should not be excused if there is any reasonable possibility consistent with the Brown decision. I know the Sixth Circuit has not directly decided this, but consistent with the Brown decision, and I think the Simpson case that I cited in my papers sort of adopted that Brown standard of any reasonable possibility that a juror is being excused because they may hold beliefs stemming from a decision that they may want to acquit in the case. So I think that would be the proper standard. But that's a standard that's been articulated by other courts, but not by the Sixth Circuit? Not by the Sixth Circuit, but if you take a look at the Simpson case, the trial judge in that case was very careful to say that was an odd case. He had two jurors that were dismissed in that case. You had a man by the name of Bacon who failed to disclose during jury selection that he had two prior misdemeanor convictions. He was excused before the deliberations. Then there was another, there was a female juror that had some problems on the panel, but she was ultimately dismissed because she had ill health. And the trial judge was very careful to point out that she was not being dismissed for any other reason other than her poor health. When that note came out on the morning of February the 23rd, I immediately objected and cited cases to Judge Nixon. What followed was a Remmer-style hearing that we had in open court, and I think if you have a chance to take a look at the transcript and what transpired during the Remmer hearing, you'll see that it was really not as advertised in the note that the foreperson had sent to the judge. These comments, whether they occurred or not, Ms. LeClaire was emphatic that she never said any of these things. That would be a credibility determination, wouldn't it? I think that's how they probably have to defer to the judges. I'm sympathetic with your concern. I mean, you know you have the Henry Fonda view of what happened here. But assuming the good faith and the logical acumen of the district court, it's the district court is seeing these witnesses. One of them says she said that, the other says she didn't say that. Should we second-guess that by reading the transcript, or should we defer to the finding of the judge who heard that testimony? With all due respect to Judge Nixon, I don't think there were really any probing or reaching findings that were made. I understand, but that doesn't really answer my question. Why wouldn't we if we're not sure which of two jurors slash witnesses, I guess, is telling the truth, but you're trying to do justice, you're the district judge, you're going to find one of them more believable than the other, and rule in that fashion. If you take an objective look at the transcript, there's just not enough there to make that kind of judgment. So it's like a clearly erroneous determination of the district judge, is that? I think what happened, and I'm not being critical of Judge Nixon, I'm asking for the standard here. I think it was clearly erroneous. You had the government. So the standard is whether it was clearly erroneous, his factual determination. I think it is. I mean, you had Judge Nixon who accepted the invitation of the government to turn it into a credibility determination. And when you take a look at the transcript, you have the first person who's brought out as the foreperson, and she's merely the reporter. She knows nothing about what happened. And the next person who was supposedly the person that overheard this, a woman by the name of Suzanne Moore, who got this whole ball rolling, had a very tepid statement during the Remmer hearing. And I quote, Ms. Malone says, I don't want to misstate anything because I may be completely wrong. It just seemed she, referring to Ms. LeClaire, mentioned she knew some people like that. That's all she said. The only juror... Let me ask you this then. If the judge should have found as a fact that there was insufficient evidence that St. Clair failed to comply with the voir dire questions, if there was insufficient evidence of that, then this would be a wrong decision that the judge made. But I want to ask the flip side. If there was sufficient evidence for the judge to find that St. Clair did not comply with the voir dire questions, would this have been an abuse of discretion to remove her? I think you could characterize it that way, but if you take a look at the... I'm asking about the content of the abuse of discretion standard under the law that's applied here. If you assume for the moment, and I recognize that you disagree with this, but I'm asking the question, assume that the judge had sufficient evidence to believe that the juror had not complied with the voir dire in a relevant way, in a material way, would then it be an abuse of discretion to remove... That's contrary to your assumption. But if you take that assumption, then would it be an abuse of discretion to remove... I think it would be an abuse of discretion. Still an abuse of discretion. So it really doesn't matter whether he believed it or not. Well, the problem is there's no basis for him to have believed it. If you... I was asking you to assume that there was a basis. You just refuse to assume that? I'm sorry? Can you assume that for the moment? I'll assume it for the moment. Assume it for the moment. Assume that it's clear as a factual matter, contrary to this case, that the juror did not comply with the voir dire questions in a material way. I mean, not that she gave the wrong address, but that she said something related to what somebody might take into account in doing their objections. Then would it be an abuse of discretion to remove that juror? I think it would be, yes. And I understood your argument to be it would be an abuse of discretion because the judge had asked the extent to which her views influenced her deliberations, her thinking. And the court did ask to LeClaire, did she say anything about that and how that influenced her one way or the other, talking about knowing people who possibly use drugs. And Juror Gates, among other things, said, I don't think she ever, in the same conversation, tied together a couple different things, that that is how she was influenced. So as I understood at the beginning of your argument, it was this potential or likely influence of her background or observation of drugs or seeing drugs that is the real problem here in terms of dismissing her. Right. But significantly, Judge Nixon never asked her, did any of this influence your ability to deliberate in this case? Do you feel like you can return to the jury room and fairly deliberate and reach some consensus with your fellow jurors? That was never done. You had Mr. Lucas Gates come out and tell Judge Nixon that he overheard these things and it was very ambiguous whether it was drug use or drug trafficking. But in response to Judge Nixon's question about, well, did it influence, Mr. Gates, did it influence Ms. LeClaire's ability to deliberate, he said, well, she never said she was influenced and I think there are other factors. And then he was sort of cut off and never got to explain what those other factors were. So I don't know how Judge Nixon could have divined whether Ms. LeClaire was credible or whether Mr. Lucas, with his ambiguous statement, was credible. Do you have a position on whether Ms. LeClaire should have, would have been appropriate for her to have answered the various questions in voir dire that I think the government argues that she should have answered in the affirmative? If you take a look at the pages that the government cited in its brief as to what they think impacted this area during jury selection, the pages indicate that the prosecutor, who was not some hypothetical, had you ever been pulled over by a state trooper? And then the other questions that the government says impacted were just very innocuous, generic questions. Is there anything that we haven't asked you that we should have asked you? My questions about drugs to the rounds of the panel in voir dire were basically do you know anybody that suffered from addiction or has abused drugs? So there was no question put to any member of the panel that would have elicited this kind of a response. And then there's a real question, I believe, as to whether she ever said anything like this. And there's not a sufficient basis to have excused her. Apparently no further questions, you'll have your full rebuttal. Thank you. Mr. Lee. Thank you, your honors. My name is Clay Lee. I'm from the Middle District of Tennessee. Before I begin, I'd like to ask if there are any questions. Go ahead and proceed. But if you want me to start off with something, I'm happy to. You had addressed his arguments. That'd be useful. Yes, your honor. To your first question, I believe that the applicable standard to the juror issue is abuse of discretion. Mr. Striance also asked, was there sufficient evidence in the record evincing lack of candor? And talks about, was a direct question asked, do you have any exposure with drug dealers with drug trafficking? And the simple answer is that direct question was never asked. Mr. Striance or appellant's counsel did at one point ask, I think something that's relevant is, but if there's something that strikes too close to home about drugs, then that's something that we'd want to know about. Now certainly, in the minds of at least three of these jurors who are back there deliberating, there was an open door to answer this question about, is there something about drugs or drug dealing that should have been answered in voir dire? This is not me standing here, armchair quarterbacking two years after the fact, saying, oh, she should have raised her hand. What question would have required her to answer if, as she testified, she knew people who used drugs, but never saw them buy drugs? Yes, your honor, and if it were limited to that, I think it's a different situation. That doesn't answer my question. All right. What if, as she testified, she knew people who used drugs, she may have seen them actually using drugs, but she never saw drug deals, she never saw drug sales? Which question should she have answered? Or in that situation, she wasn't required to answer any questions? I'm talking about voir dire questions. Yes, your honor. And I think if it were as an innocuous experience of, you know, at a concert and seeing someone do drugs, which I suspect many people have, that is something approaching an everyday occurrence. She should not then have necessarily answered the question. I think it would be fair to say that that wasn't an open door, but if it's something So, judge, in order for Judge Nixon not to have been abusing his discretion, he must have come to the conclusion that she saw more than that in her background. Yes, your honor. I think that is fairly evidenced from the record. So it then becomes a factual issue, according to your view of the law, becomes a factual issue whether the judge could, without clear error, come to the conclusion that she had seen in her experience more than just occasional use of drugs. Is that right? I believe so, your honor. You said factual. I think in his discretion to make that determination, but Based on what they testify, right? Yes, your honor. We're talking about facts as to what St. Clair, is that her name? LeClaire. LeClaire. Whether LeClaire had actually had that experience that she should have fessed up to in voir dire. Yes, your honor. What evidence is there, was there before Judge Nixon that she had that additional experience? Was just the hearsay of the other wit of the other juror? Yes, your honor. I think Trying to get at what exactly you're basing your no clear error position on. Sure. I think the statements of Juror Gates, one time she'd mentioned that she'd seen it being dealt and another time she mentioned that she never actually saw people doing drugs. We should say, according to you, we should say that the district court didn't abuse its discretion, because it should have believed the hearsay of this LeClaire, right? Because LeClaire did, LeClaire just said I never did have that prior experience, right? But purportedly told her fellow juror that she had, right? And I think it's worth noting that Malone certainly corroborates, although not as unequivocally as Juror Gates, that the statements were made. And then also I guess you really wouldn't have to figure out the truth or non-truth of whether she'd seen drug dealing going on or whatever it was, but whether she'd actually told her fellow jurors that she had. Yes, your honor. I'm sorry, go ahead. So the question that you seem to be focusing on is the one that was asked by Patterson's counsel, which is if there's something that strikes too close to home about drugs, then that's something that we would want to know about. And so you say it's that question that should have elicited a response from Ms. LeClaire that she knew of some drug users and maybe even knew that people dealt drugs? And I don't mean to limit it to that one specific statement. The reality is this was a drug case. This was a drug distribution case. The indictment was read before everyone. But we have to look at the questions that were asked, right? That's correct, your honor. And determine, as Judge Nixon was trying to make a call, whether he made a good call or whether he abused his discretion in determining that there was good cause to, presumably, to remove LeClaire. I'm just trying to get a sense of these three or four questions that were asked of her, which of them required her, LeClaire, to, as Judge Rogers said, fess up as to whatever she knew about drug dealing or drug usage. And I'm having a hard time finding any question that would require her to give such a response. So I was looking for your help. Well, your honor, and certainly I wish the record had that explicit question. Like, does anyone have a close family member or friend who's a drug dealer or who drug traffics or who deals with that? And the record doesn't have that. No doubt. It isn't there. And I don't mean to hold a position that there's one specific question that she remained silent and she should have answered. And I think it has to be viewed within the totality of the circumstances. The fact that this was a drug trafficking case. The fact that it's not up to her to figure out what kinds of questions should be asked. Absolutely. That falls on the United States. What other questions supplemented the question that Judge Kolch has referred to, to give the sort of feel that she should have said something? One point, Appellant's counsel also asked, we're just trying to determine does anyone have such a bias that they could not be fair or impartial in a case like this? Certainly I would think that exposure in dealing with- If I was a juror, I wouldn't have answered that just because I've seen similar acts. In fact, I think most people would not answer that. Yes, Your Honor. And I think the difference is, you know, the comparison about seeing someone doing drugs on the street and not knowing anything about it, versus having a close enough reaction. I'm asking about the questions. I think it's Judge Kolch's question as well, which is what are the questions that should have elicited this? And you identified one. Are there any others? Because asking whether you're biased, I can't see why that would elicit it at all. It just doesn't strike me that that would cause any juror who would- it could be a bank robbery case and you say, are you biased? And I'd say, well, I saw a bank robbery two days ago, but I'm not biased and not even raised your hand. Yes, Your Honor. Right? And I do- I'm going to use an analogy, but not to sidestep your question, so I'm going to come back to it and ask you if it answers. I grew up on a farm, and if we went into a case about cattle and somebody asked, you And if somebody asked, well, do you have any biases that might weigh in this trial? I'd say no. I would think that I would have a bias, Your Honor. You might think you have a bias, but you might think, I know all about cows, but I'm not biased. I think that's what most people would think, unless you said, do you know a lot about cows or do you have opinions about cows? Then I might say, well, I better raise my hand because I know a lot about cows. Okay. Right? If I'm thinking that way, does that mean you lose your case or is there something in there that's- No. Are there questions in there that relate to, do you know about drugs, as opposed to are you biased? There are no- I don't believe that the record reflects any questions about do you know specifically about drugs, about drug trafficking, about this is how it works, these are kilos, these are- I don't believe the record- What's the closest you get to that? It's just not in there? I think the closest you get is the general discussion and, as I mentioned, the totality about it being a drug case. The other jurors sure thought that they were required to talk about any knowledge they had about drugs. They just remembered it wrong or is there anything there which suggests that they should have talked about drugs as a potential juror? I think the totality of the circumstances reflect that they felt compelled that it was an appropriate subject matter to discuss. If it was applicable. Well, don't the totality of the circumstances suggest that the jurors, at least two or three of these jurors, Malone and maybe the foreperson, and who is this other one, I forgot his name, who comes with a G. Gates, your honor. Gates. Perceived LeClair to be the holdout. When you look at the timeline here, there were these two or three hours of deliberation. They couldn't reach a verdict. They come back in, as I recall, Judge Nixon gives them a modified Allen charge. They go back out and then it's after that when these jurors, the foreperson, contacts Judge Nixon and says, there's this problem. And it seemed that, as you read the responses from Malone and Gates, part of the problem they have is the way in which she's deliberating, how she's influenced by whatever it is they perceive her to be influenced by. It seems that maybe that just crosses that line where they're more bothered by how she's deliberating. And that would be an impermissible reason to pull her from the jury at that point. Yes, your honor. And that goes in line with our second justification, that Ms. LeClair was bringing in this extrinsic knowledge into the deliberative process in violation of the judge's instructions to consider only the admitted evidence. And the extrinsic knowledge would be, let's say she saw somebody buy a marijuana cigarette at a concert. That's the extrinsic knowledge that, possibly? Possibly, certainly. I think the record reflects, certainly by juror Gates' statement, as corroborated to some extent by the foreperson Malone, that the extrinsic knowledge she was bringing in was something a little more than that. And what I don't want to do is sit and conjecture and speculate about what was discussed outside of the record. Because, frankly, nobody knows what Ms. LeClair was thinking or what she said. But doesn't that, then, Mr. Strians talked about these other circuits and the standard, which is, is there any possibility from the record that the removal stemmed from the juror's view of the case? Or any reasonable possibility or any substantial possibility? It does seem that there is, it may be any possibility, right? I mean, they're concerned about these other jurors, about her deliberations and what she's saying about the case. Am I going too far with my statement? No, no, not at all, Your Honor. You know, I think our best case on that point is the Ebron case out of the Fifth Circuit, where the juror, ultimately, they discussed the Brown and the Semington case. There they found that the deliberative process was not implicated, because the trial court dismissed the juror for failure to abide by the oath introducing extrinsic knowledge. In that case, it was related to what the defense counsel, what they had done, and lack of candor in terms of her knowledge of the case. Can we infer, maybe we can't, but that she was the holdout because as soon as she's removed from the jury, an alternate is placed on the jury, and within an hour or two, there's a unanimous verdict. Kind of makes you, pretty much looks like she's the holdout. Your Honor, certainly can. I don't think that it is a fair depiction, though. The timeline is deliberations began at 10.52 a.m. on day one. The record reflects that they took a noon lunch break, and then they returned, I don't know when the note came back, but the jury returned at 3.25 for the Allen charge. So you've got about four and a half hours, a lunch break in there. I wasn't there, I don't know how soon the note came back or how long the lunch break was, any of that. And then the next morning, deliberations resumed at 11.33, and you had a verdict by 1.43. There's no reflection of a noon lunch break. Maybe there was. I don't know. But there's really not that much of a difference in the amount of time that was delivered. If our review is abuse of discretion, how can we look at what happened after he allegedly abused his discretion? I'm wondering whether it even makes sense to look at how quickly they came back. I mean, they might have come back an hour later and acquitted. Or if the judge had not replaced the juror, they might have come back an hour later and convicted. But don't we have to look at what the judge did, when the judge did it, not in retrospect an hour later? I agree, Your Honor. It's about what was before Judge Nixon at that point in time. And in an attempt to address, I'm sorry, Your Honor's question about can we not look at after the fact and surmise that she was the lone holdout, we don't know, Your Honor. And there's nothing in the record apart from conjecture to support that. Deliberations, sure, it took a little longer on the first day. But part of that was, we're hung, we're sending a note back, we modified Allen charge, all that. So there's this interesting question of do we look only at Judge Nixon's determination, whether he abused his discretion or it's clear error, whatever the standard might be. Or do we also look at the juror's conduct? To the extent in their discussions with Judge Nixon, they seem to indicate some frustration or concern about the deliberative process. Do we not look at that at all? We just focus simply on Judge Nixon's decision here? I think it is appropriate to look at the juror's conversations with Judge Nixon while he's determining whether or not the juror should be dismissed. I think that is appropriate. Up until the moment that Ms. LeClaire is dismissed, I think that's an appropriate consideration, Your Honor. Okay. Any further questions? Thank you, Mr. Lee. Thank you. Your time has expired. We appreciate it. And Mr. Strians, you've got, I think it's three minutes of rebuttal. If you do look at the time that the jury deliberated after Ms. LeClaire was dismissed in trying to infer whether Ms. LeClaire was the lone holdout, the record reflects that at 11.33 the new juror was added and the deliberations began. They concluded at 1.43. The record also reflects that the clerk indicated they had a 45-minute lunch hour, so it was one hour and 25 minutes. What is the legal rationale for looking at that post-Nixon decision activity? I think the only legal rationale, and I look to the Brown case, is that you, if I understand the Brown case and what the D.C. Circuit is saying, is that these issues are always unclear and you have to really sort of read the tea leaves in this area to make a determination. Is there an inference? Is there any possibility that this person was the lone holdout? And is she being? We don't look at it through the glasses of the district court. We just sort of look at it as to what he should have figured out, even though he didn't have all the evidence that we have. It seems a little tough on district court judges to do it that way, is what I'm asking. I think Judge Nixon may have made it tougher on himself. He tries to make a credibility determination at the invitation of the government and then doesn't really have a complete remor hearing. He brings out three jurors. One juror that knows absolutely nothing. She's just the reporter. The other juror that is as tepid as can be, who says I might be completely wrong. And then you bring out Mr. Gates and you can't really- I understand that argument and it has force. I'm just asking whether you can add to the force of that argument stuff that he didn't know, like the future. No, you can't. I understand that. I know your time is limited, but what's your strongest argument that there's a possibility of any possibility or a reasonable possibility that the removal stemmed from LeClaire's view of the case? Because we've got here sort of two things going on, whether Ms. LeClaire should have got sort of going along with that, I guess, whether there's a possibility, any possibility she was removed because of her view of the case, how these other jurors viewed her handling of deliberations. And so I'm interested in the latter part. I think the best evidence is found in the four corners of the note where Ms. Menon, the foreperson, writes, I feel that this prior information could perhaps be influencing her ability to reach a fair decision. So that goes right to the heart of the deliberative process. And then Mr. Gates, when he comes out and he's sort of all over the map as to what he's trying to tell the judge, he goes on to say that there are other factors, and then he's cut off and he's not able to complete. But I think that the note itself indicates that it's influenced. I'm happy about that because I think we're getting down to the crux of this case is really what the content of the note is. And I'm just wondering if we're talking about the discretion of the district judge, if there was something that was, and again I'm hypothesizing, hypothesize that there's something that was more clearly a violation of the, or a refusal to answer the voir dire questions. So if they were specifically asked in a murder case, have you ever seen a child die? And nobody answers. And then in jury deliberations, somebody says, when I saw my child die, I said to myself, this nobody who does that will ever, whatever, says something. And then a note was written saying, so and so didn't answer. She saw a child die. And it's affecting her ability to decide this case fairly. You're saying in that situation, a judge could not? I'm not saying that at all. Well, but in that case, the actual note says, I think it's affecting her analysis. You're saying that's the key, which means that you can't take that person off the jury. But your hypothetical is so clear. What we have. Well, but then we're just getting back to how clear it is that they should have answered questions. But if you look at the questions, you'll have an independent basis to make that decision. Right. And you look at the cases, I was the only one, the questions, I was the only one that had any probing questions of the panel as to whether drug addiction would have any role in their ability to be fair and impartial in the case. Fair, and that's what we asked them about, and that's what we need to look at. I'm just questioning only your argument that the very note shows that there was something wrong with the other juror's view of the juror who didn't answer the voir dire properly by saying, and it's affecting her decision. When you say, and it's affecting your decision, that's what's typically going to be the concern of the first juror, of the testifying juror, when they say that the other juror didn't answer voir dire questions. Right? I mean, I just don't see how that means that there's something wrong by itself. Are you with me? I am with you, but it would be my insistence that you had a juror that simply was not getting with the program, and she was not voting to convict. And it's consistent with that. They write a letter to the judge, hey, can we get rid of this one and get another one like we're at the grocery store returning something at the counter? And this was not the only jury problem that we had in the case. I think you also noticed one of my issues is about an issue that developed in jury selection where Judge Nixon was making what he thought was a joke turned out to be an intemperate comment about these men are in the courtroom to make sure the judge does not get harmed. We're familiar with that. Your time has expired some time ago. I appreciate your comments on that topic. Thank you, counsel, both of you for your arguments this morning. Very interesting case, of course. The case will be submitted, and I should note that the appeal by Herman Majors will be submitted on the briefs as well. Thank you.